FILED

APR 2 2 2021

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:21-CR-30-M

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| YOLANDA HARPER BARNHILL | ) | |
| | ) | |

The United States Attorney charges:

## INTRODUCTION

At all times relevant to this Criminal Information:

1. The Department of Education ("ED"), an agency of the United States Government, provided oversight and administration of federal funds provided to students under the authority of Title IV of the Higher Education Act of 1965, as amended (hereinafter "Title IV Aid"). Title IV Aid included the Federal Pell Grant Program and the Federal Direct Student Loan Program.

2. The Pell Grant Program ("Pell Grant") provided grants to eligible students in need of financial assistance to pursue post-secondary education at participating institutions. Pell Grants were made using ED funds and were provided to students for educational purposes. They did not have to be repaid by the student recipient. Pell Grants were awarded to students who had not yet earned a bachelor's or professional degree.

1

3.      Under the Federal Direct Student Loan Program ("FDSLP"), the federal government borrowed funds from the United States Treasury and disbursed the loan directly to the student at his or her school. The student repaid the loan directly to the federal government. Direct Subsidized Stafford Loans were awarded to students who demonstrated financial need. Because ED subsidized interest, borrowers were not charged interest while enrolled in school at least halftime or during grace and deferment periods. Direct Unsubsidized Stafford Loans were awarded to students regardless of financial need. Borrowers were responsible for paying the interest that accrued during any period. For a student to be eligible for a student loan under FDSLP, the student must have received a high school diploma or its equivalent.

4.      To be eligible to receive loans or grants, federal regulations required the student to complete a Free Application for Federal Student Aid ("FAFSA") that is submitted to ED's Central Processing System ("CPS") in Clarksville, Virginia. The CPS calculated the FAFSA application information submitted by the student using the appropriate Federal Methodology to produce the Estimated Family Contribution ("EFC") and also performed data matching with various other federal agencies to confirm eligibility requirements. The CPS would electronically issue an Institutional Student Information Record ("ISIR") to post-secondary institutions designated by the student on the FAFSA. The ED and the post-secondary institutions relied upon the information that the student provided on the FAFSA to determine whether the student was eligible to receive student financial aid and the amount of any student

2

loan or grant. The FAFSA required student applicants to certify they would use the Title IV Aid only to pay the cost of attending a post-secondary institution and notified them that purposely giving false or misleading information on the FAFSA may subject the student to criminal penalties, including payment of a fine, imprisonment, or both.

5. Title IV Aid had to be used for an educational purpose and could be used to satisfy tuition and fees charged by the institution and other expenses incurred by the student to pursue an education program, such as books, supplies, transportation, and living expenses.

6. To ensure Title IV Aid was used for educational purposes, the funds were sent from ED, or the lender, directly to the institutions where the students were enrolled. The institutions applied those funds to a student's account to cover the student's tuition, fees, and other educationally related charges incurred by the student at the institution. When the total amount of Title IV Aid credited to the student's account exceeded the total amount of authorized charges, then the institutions would disburse the remaining credit balance refunds to the student within a specified time period.

7. Asheville Buncombe Technical Community College, Grantham University, Guilford Technical Community College ("GTCC"), Miller-Motte Technical College, Pitt Community College ("PCC"), Strayer University, Ultimate Medical Academy, Wake Technical Community College ("WTCC"), and Wayne Community

3

College were post-secondary institutions that participated in the Title IV Aid program.

8. WTCC used student loan servicer Bank Mobile, a Division of Customers Bank, in Connecticut, to process student credit balances.

9. YOLANDA HARPER BARNHILL (hereinafter referred to as "BARNHILL") resided in the Eastern District of North Carolina.

10. BARNHILL maintained bank accounts ending 0667, 1895, 5733, and 8177 at State Employees Credit Union ending 8177 ('SECU").

11. BARNHILL maintained bank accounts ending 8812 at Self Help Credit Union ("Self Help").

12. BARNHILL was married to JB. JB maintained bank accounts ending 1473 at Self Help and ending 4795 at PNC Bank ("PNC").

## COUNT ONE

13. Introductory Paragraphs 1 through 12 are re-alleged and incorporated by reference into this Count.

14. From on or about February 20, 2012 to in or about July, 2019, within the Eastern District of North Carolina and elsewhere, BARNHILL and others, known and unknown to the United States Attorney, did knowingly and intentionally conspire, confederate, and agree to commit an offense against the United States, to wit, to knowingly and willfully obtain, and assist others to obtain, by fraud and false statements, Federal Student Aid disbursed by the United States Department of

4

Education to permit individuals to attend post-secondary institutions, said funds being provided and insured under subchapter IV of Chapter 28 of United States Code Title 20, and part C of subchapter I of chapter 34 of United States Code Title 42, in violation of Title 20, United States Code, Section 1097(a).

## OBJECT OF THE CONSPIRACY

15. It was the purpose of the conspiracy for BARNHILL and others to fraudulently obtain approximately $1,246,632 in Financial Aid funds from ED without any intention of attending post-secondary institutions.

## MANNER AND MEANS OF THE CONSPIRACY

16. It was part of the conspiracy to electronically submit FAFSAs to ED, for individuals who had no intention of attending post-secondary institutions.

17. It was further part of the conspiracy to falsely claim these individuals had graduated from high school or obtained a General Equivalency Diploma ("GED");

19. It was further part of the conspiracy to submit fraudulent placement test scores to post-secondary institutions to enroll students for online courses;

20. It was further part of the conspiracy for BARNHILL or others to complete the online assignments for the enrolled students;

21. It was further part of the conspiracy to deposit enrolled students' credit balance refunds into BARNHILL's and JB's bank accounts;

22. It was further part of the conspiracy for the enrolled students to receive portions of the fraudulently obtained credit balance refunds; and

5

23. It was further part of the conspiracy to make false statements to law enforcement.

## OVERT ACTS

24. In furtherance of the conspiracy, and to effect the object thereof, at least one of the co-conspirators herein committed one or more of the following overt acts, among others:

    a. On or about February 20, 2012, BARNHILL submitted a FAFSA to Wayne Community College for SB, falsely representing that SB intended to attend classes and complete school assignments;

    b. On November 13, 2013, BARNHILL sent a fabricated placement test score on Lenoir Community College letterhead to Wayne Community College for straw student JB;

    c. On or about September 30, 2014, BARNHILL caused WTCC to deposit a $6,630 refund for straw student SC into BARNHILL's Self Help account ending 8812;

    d. On or about June 24, 2015, BARNHILL withdrew $8,500 in US currency from her SECU account ending 0667 after receiving three refunds totaling $9,887.25 from WTCC for straw students BR, NW and RR;

    e. On or about September 23, 2015, straw student JJ paid BARNHILL $5,000 in US currency after fraudulently receiving a $6,027.50 refund from WTCC;

f. On or about September 25, 2015, BARNHILL caused WTCC to deposit three refunds totaling $19,150.50 for straw students AC, AM and BR into JB's Self Help account ending 1473;

g. On or about September 25, 2015, straw student LH paid BARNHILL $3,100 by cashier's check after fraudulently receiving a $6,652.50 refund from WTCC;

h. On or about October 15, 2015, BARNHILL paid straw student SC $3,500 by cashier's check after WTCC deposited a $6,598.50 refund for straw student SC into BARHHILL's SECU account ending 0667;

i. On or about February 12, 2016, BARNHILL caused GTCC to deposit three refunds totaling $5,641.35 for straw students JJ, RR and SC into BARNHILL's SECU accounts;

j. On or about April 19, 2016, BARNHILL caused GTCC to deposit six refunds totaling $1,785 for straw students CA, MH, NW, RR, SB, and SC into BARNHILL's SECU accounts ending 0667 and 5773;

k. On or about February 20, 2017, BARHILL paid straw student EB $2,500 by SECU cashier's check after WTCC deposited a $6,626.50 refund for straw student EB into BARNHILL's SECU account ending 0667;

l. On or about October 18, 2017, BARHILL paid straw student SM $2,000 by SECU cashier's check after GTCC deposited a $2,732 refund for straw student SM into BARNHILL's SECU account ending 0667;

m. On or about October 25, 2017, BARNHILL falsely stated to federal law enforcement that she never submitted FAFSAs for others;

n. On or about June 21, 2018, BARNHILL withdrew $1,500 in US Currency from SECU after WTCC deposited three refunds totaling $4,106 for straw students JB, LF and LS into BARNHILL's SECU accounts ending 0667, 8177 and 5773;

o. On or about October 17, 2018, BARNHILL withdrew $9,918 in US Currency from SECU after receiving three refund deposits totaling $10,064.50 for straw students BB, TL and SM into BARNHILL's SECU accounts;

p. Between on or about February 15, 2019 and February 19, 2019, BARNHILL withdrew $24,800 in US currency from SECU after WTCC deposited refunds totaling $26,917.25 for four straw students into BARNHILL's SECU accounts; and

q. On or about July 9, 2019, BARNHILL caused GTCC to deposit a $495 refund for straw student TC into BARNHILL's SECU account ending 8177.

All in violation of Title 18, United States Code, Section 371.

G. NORMAN ACKER, III
Acting United States Attorney

SUSAN B. MENZER
Assistant United States Attorney

8